Dargan, Ch.
dissenting. — In this case, I have heard nothing in the argument, or in conference, to change or modify my views as expressed in the circuit decree. Indeed, my opinion is confirmed ; for, after a full research, no other authorities could be cited, against that opinion, than those very cases which I had already considered before making up my judgment; all of which are cited in the decree itself. These cases I regarded as, in the highest degree, apochryphal, and. their inconsistency with the current of English decisions, and the principle to be deduced therefrom, has been clearly demonstrated, by one of the ablest modern commentators on English Law, (Jarman, on Wills.) The first of the cases (Chalmers v. Storril) was but little argued, and not elaborately considered. There was not a precedent cited in support of the opinion of the Court, either by counsel or the Master of the Rolls.
The main ground of the decision was the presumed intention, on the part of the testator, of creating an equality between his wife and children. But, as if half conscious that his conclusion needed support, he proceeded to strengthen it by alluding to the tact that the testator has, in his will, described the estate disposed of — “ Further,” says Sir William Grant, “ by describing his English estates, he excludes the *93 ambiguity which Lord Thurlow, in Foster v. Cook, imputes to the words 1 my estate’ as not necessarily excluding, dower.”
Mylne and Keene. 262; S. C. 7 Com. Eng. Ch. 309.
In Dickson v. Robinson, decided by Sir Thomas Plumer, (Master of the Rolls), Chalmers v. Storril was implicitly followed'as an authority; and no other reason, or authority, but the previous decision, is given, either in the aigument or judgment of the Court.
The same remarks apply to the case of Roberts v. Smith. There has been no decision to this effect, by the Lord Chancellor, or by the House of Lords. Every judicial opinion from these high sources looks entirely the other way, as I will presently attempt to show. But, in the stead thereof, we have the decision of three English judges, of inferior rank, or rather of one — for the two last of this series of cases followed the first, as a precedent, and, simply, because it had been previously so decided. And I am in no way bound, on the authority of these cases, to yield my own deliberate convictions, even as to what is the English law upon the subject. I have said, in the circuit decree, that the decisions that I have been commenting upon, are not in harmony, either with the general principles of law, or the general current of the decisions.
I purpose, now, taking a glance, first, at the decisions of the English Courts on this subject — and, then, I will bring under review what the Courts of the States of this Union have said on the same subject.
In the first place, I will remark that, in the construction of a man’s will, we are not to presume that he has affected to devise or bequeath that which does not belong to him, or which he has no right to dispose of; but the contrary is a fair and legitimate presumption. This general proposition must command univeral assent, for the contrary presumption, I think, would be an absurdity. In Dummer v. Pitcher, the testator, in his life, had caused certain stocks tobe transferred to himself and his wife, in their joint names. The Court held, that, on the death of the husband, this stock survived to the wife. The testator, by his will, gave to his wife, for life, “ the interest on all his funded •property, or estate, of whatsoever kindHe also made other and additional provisions for her. And the question was — whether the wife was to be put to her election? — or, in other words, whether she was entitled to take the stock, as hers, by right of survivor-ship, and the other benefits conferred on her by the will. And it was decided that she was entitled to both. The Lord Chancellor said, “ There is nothing more undoubted in law, than that, to make a case of election, the intention must-appear certainly and clearly, both as to the property assumed to be disposed of, and as to the implied condition to be fulfilled *94 ^ Person not! without the strongest indications of such ,an intent, to be understood as dealing with that which does not belong to him. As for his supposing himself to have rights which he has not, unless it appears plainly upon the face of the will, it would be most dangerous to be guided by any conjecture that may be raised to this effect, or to let in extrinsic proof of it.” Again, he says, “There is nothing to justify the Court in believing that the testator intended to give what is not his own.” This principiéis applicable to all cases of election. It is, in an especial manner, applicable to cases where the right of dower is involved. For dower is a claim highly favored in law, as none will deny. And, in the construction of a will involving the widow’s right of dower, we must start out with the presumption that the testator did not intend to control or exclude the right; because, he has no more right to do so, than he has to dispose of choses in action which survive to her; or any other estate, or interest, which belongs to her in another and independent right, and which he had no power to control or dispose of. In my opinion, this principle alone can explain, or justify, very many of the cases, in which the widow has been held to be entitled to her claim of dower, and also to the provisions of the will in her favor, notwithstanding the former, upon a less stringent rule of construction, would seem to come in conflict with the will. All the cases on the subject, both English and American, concur in establishing one doctrine, (a doctrine which the two chancellors, who sat with me on the hearing of this appeal, admit,) that the implication which puts the widow upon her election in a claim of dower, must be a necessary implication. There is, of course, some latitude here as to what is a necessary implication, or inference. A necessary implication, or inference, arising on the face of a will, or deed, I apprehend, unless words have lost all certainty, means a construction, the converse of which would be unreasonable, far fetched and forced. Starting out on the presumption that the testator did not intend to do that which he had no right to do, (to deprive the widow of her dower,) if there be not a necessary implication in the sense of the foregoing definition, to exclude her from her dower, or to compel an election, then she will be entitled to both claims. But, if the intentions of the testator to the contrary be clearly and unambiguously expressed, or indicated, so as to raise a necessary implication that he intended her to take under his will, in lieu of her dower, she will be put to her election. This is the result of the cases, and nothing more can be made of them. And they establish, on the broadest foundations, the principle that the widow’s claim, both to her dower and the provisions *95 for her under the will, shall prevail, except against a necessary implication, or an expressed intention.
2 John. Ch. R.

2 Sch. & Let. 450

Cooper’s Rep. 319
Chancellor Kent, in Adsit v. Adsit, says — “ To enable us to deduce such an implied intention, the claim of dower must be inconsistent with the will, and repugnant to its provisions, or some of them. The title to dower is paramount to the testator’s title, and he has no control over it.” “ Every devise, or bequest,” he says, “imports bounty, and does not naturally imply satisfaction of a pre-existing incumbrance.”
In Birmingham v. Kirwan, Lord Kedesdale said — “It to be collected, from all the cases, that, as the right of dower is, in’itself, a clear legal right, an intent to exclude that right, by voluntary gift, must be demonstrated either by express words, or clear and manifest implication. If there be any thing ambiguous, or doubtful — if the Court cannot say it was clearly the intention to exclude — then the averment that the gift was made in lieu of dower cannot be supported; and, to make a case of election, that is necessary — -for a gift is to be taken as pure, until a condition appear. This I take to be the ground of all the decisions. Hitchin v. Hitchin proceeds clearly on this ground, and all the cases seemed to have followed it,” «fee. In the case last cited, the testator devised his house aud the premises to his wife for life, at a rent below the actual value, she keeping the same in repair, and not alienating, except to the remainderman. He also gave her other legacies, consisting of stock of cattle, household goods, plate, &c. The testator also devised his freehold property to trustees, upon trust. Out of the rents and profits, or by sale or mortgage thereof, to pay debts ; and, next, to raise the sum of £6,QUO — of which sum he directed £200 to be paid to his wife, and the residue, in various proportions, to other persons. As to all the rest of his lands, including the “remainder in the estate,” devised to his wife for life, the testator devised the same, subject to debts and legacies, to John Birmingham for life — remainder to his son. It was decided, that the widow should not take dower out of the estate given to her for life, but that she was endowable out of all the other real estate, given to other devisees, though said real estate was chargeable with a pecuniary legacy to herself.
The case of Lord Dorchester v. Earl of Effingham, was heard by the same judge who heard Dickson v. Robertson, (Sir Thomas Plumer, then Yice-Chancellor.) Lord Dorches-ter, by his will, gave to his wife £500, and other benefits. He devised to her, for life, Stubbings House and fifty-three acres attached thereto, being part of the Stubbings estate. He directed that all his landed estate, and other property, should be attached to his title as close as possible, and bequeathed certain debts due from government, and other personal estate not disposed of, to his executors, to increase his *96 landed estate. Hear the Yice-Chancellor. “ It is clear that tjje wjq ¿oes 110t) jn this case, express in terms that the widow is to be barred of dower. If she is to be barred, the Court must collect it from inference. 4 Court must be cautious in doing this, it being dangerous to collect, by guessing and conjecturing, that a testator meant what he has not said. The testator, in this case, might not have been apprised of anything about dower, when he sat down to give his wife the house and grounds about it, for her life : probably he had no intention, in any way, as to dower out of the rest of bis estate.” “ As to the words in the will,” he said, “ about attaching the testator’s land to his title as closely as possible, they create no inconsistency with the claim of dower. That claim may postpone or abridge such object in the testator’s will, but is .not absolutely inconsistent and incompatible with it, and both may stand together.” It was held, that the widow was not put to her election, and was endowable out of the Stubbings estate, except such portion of it as had been devised to herself for life. It is to be remarked that these cases, and others that may be cited, establish the doctrine that the claim of dower, operating as a postponement or abridgement of devises to other persons, does not present such an implication as will exclude dower.
2 Vern., 365
2 Vern, 403.
In Lawrence v. Lawrence, the testator gave legacies of personai property to his wife. He also devised a part of his real estate, of the yearly value of £130, to her during her widowhood, and the remainder of his'whole estate he devised to the plaintiff. Lord Somers hold, that the provisions of this will presented to the wife a case of election. But inis decree was afterwards, on a re-hearing, before Lord Keeper Wright, reversed, because it did not appear that the testator intended to bar the wife of her dower. The decision in this case, in substance, was that a devise to the widow of a part of the lands, out of which she was dowable, does not exclude her from her right of dower as to the rest, though devised to others, the devise and sole possession of a part of the lands out of which the dower is to issue, not being deemed inconsistent with the assertion of a right to a third of the whole. The same question, under the same will, was made, fifteen years later, before Lord Camden, by the remainderman, whose estate had fallen in. The decree of Lord Camden re-affirmed the right of the widow to her dower. And, on appeal to the House of Lords, after argument, it was held, “ that so much of the complainant’s bill as relates to the questioning oí the dower of the said Dulcebella Lawrence, should be dismissed,” with costs.
So, in the case of Hitchen v. Hitchen, the testator devised certain real estate to his wife for her life, and devised the residue of his lands to other persons. The Lord Keeper held, *97 that the devise to the wife was not to be looked upon as any recompense, or bar of dower, but as a voluntary gift.
8 Viner’s Abr. 366-
Story Eq. sec. 1087-
1 Keene, 763.
J. Leman devised lands to his wife for her life, and devised other lands to his brother (the plaintiff) and his heirs. The defendant, the widow, enters upon the lands devised to her, which were of more value than her clower, but not devised to her in lieu and satisfaction of dower; and, afterwards, brings dower against the devisee of the other lands, and recovers dower and costs against him, who brings his bill in this Court to be relieved against the judgment, <fcc. Parker, Oil., in referring to the case of Lawrence v. Lawrence, said “ this point is determined already by the House of Lords, that there is no relief in this case in equity, and, therefore, the bill must be dismissed.”
The unmistakable conclusion to be deduced from these cases is, that, whenever the dowable estate is devised in general terms, it passes cum onere, and does not exclude dower — though other lands, or even a part of the same estate, is devised to the widow, and she has taken under the will.
But let me resume my review of the authorities. Mr. Justice Story holds the following language : “ A case of election cannot ordinarily arise, where the property is devised in general terms; as, a devise of all my real estate in A. Such a devise,” he holds, “ is subject to the right of dower, for it is not apparent that he (the testator) meant to dispose of any property but what was strictly his own, subject to that claim.” Again, in sec. 1083, the same author remarks, “if a testator should bequeath property to his wife, manifestly with the intention of its being in satisfaction of dower, it would create a case of election. But such an intention must be clear and free from all ambiguity, It will not be inferred from the mere fact of the testator’s making a general disposition of all' his property — although he should give his wife a legacy, for he might give only what was his own, subject to dower. There is no repugnancy in such a devise, or bequest, to her right of dower. The right to dower being, in itself, a clear legal right, an intent to exclude that right, by voluntary gift, ought to be demonstrated by express words, or by clear and manifest implication.”
In Dawson v. Bell, the testator devised all his free-1 hold and copyhold lands to his children, equally to be divided among them, subject to an annuity to his wife during her widowhood. He also gave her all his household goods, &c. It was contended that the gift, by the testator, of all his real estate, for the purposes of ’nis will, was inconsistent with the abstraction of one-third of those estates for dower, in addition to the benefits given by the will to the widow. The Master of the Rolls said: “That the testator had himself no intention to leave his wife her claim of dower, when he made this will, cannot be reasonably doubted. But the *98 question is, whether the disposition of the will is of such a nature as to be inconsistent with the enjoyment of dower by the widow. In the consideration of this question, when a testator speaks of all his estate, he must be held to mean all bis estate, subject to the legal rights against them; and among these is the wife’s right to dower. In this case, the testator gave all his freehold messuages, dec., subject to the payment of the annuity to his wife; and I cannot say that this devise is clearly inconsistent with the enjoyment of her dower by the wife. She must, therefore, be decreed to be entitled to the enjoyment of both the annuity and her dower.’’
1 Keene, 765.
7 Cowen, 287.
1 Dallas, 615.
In Harrison v. Harrison, the testator gave all his farms, lands, estates, &c., upon trust, to receive the rents and profits, and to pay to his wife, during her widowhood, £.200 per annum — the residue to his son during his minority: his son, on his attaining twenty-one years, to be let into the possession of the estates, subject to the annuity in favor of the widow. It was held not to be a case of election. The Master of the Rolls, speaking of the devise to the son, says, “ prima facie, his (the testator’s) farms, lands, estates, &c., must mean his real estate, of which he had the power of disposing: which would be his real estate, subject to the lawful claims ; and one of these lawful claims would be the dower of the wife.”
In Jackson v. Church, the testator devised to his wife, durante viduitate, his dwelling-house and gardens, together with certain personal property. The rest of his estate, real and personal, he gave to his two sons, one of whom was to keep his mother’s live stock, and to contribute to her support, if requested. The question was, whether the wife was entitled to both dower and the benefits given her by the will ? It was held that her taking the latter was no bar to her claim of dower. The Chief Justice said : “There is, in this provision, nothing inconsistent with the claim of dower. The devise to the two sons will be less valuable, but that constitutes no objection.
“ There is no incongruity in enforcing the claim to dower and the devise. The two stand well together,” &c.
Kennedy v. Vedrow & Wife, is strikingly analagous to the principal case. Richard Johnson devised and bequeathed to his wife, Ann, a certain house and lot, &c., household goods, and live stock, to her and her heirs forever — also, a legacy of £1,000, to his said wife, and some small pecuniary legacies, to his brother and his brother’s three sons; to his sister, Ann Nedrow, his three hundred acre tract of land, situate in, &c., to her heirs and assigns forever; to his wife, Ann, “ the one moiety, or undivided half part of all that my five hundred acre tract of land, situate, &c., to her heirs ana-assigns forever, provided,” &c. “ The other moiety, or undivided half part of my said five, hundred tract, I give and *99 devise unto my three sisters, Ann, Catherine and Rebecca, each one-third, to them,-their heirs and assigns forever,” &c. The widow had before brought her action for the partition of the five hundred acre tract, and her half had been assigned to her. And she now brought her action for dower out of the other moiety that had been devised by the testator to his three sisters, and had been assigned to them. The question for the opinion of the Court was, whether, upon the whole will, the devises and bequests therein contained, or any of them, to the said Ann, the demandant, are sufficient in law to bar the said Ann of her dower. It was well considered ; for the Chief Justice, in delivering the opinion of the Court, remarked that, in the argument, the whole law upon the subject had been exhausted. “ Dower,” says the Chief tice, (McKean,) “is a legal, equitable and moral right. It is favored, in a high degree, by law, and, next to life and liberty. held sacred. In the will before the Court it is nowhere expressed that the devises to the demandant shall be in lieu of dower ; but it is contended that the intention of the testator, collected from the whole will, appears to be that the demand-ant shall be barred,” &c.; “ that the devises to her are of lands, in fee; and that these being of four times the value of the dower, ought to be considered a recompense or satisfaction for it.” “No devise,” he says, “to the wife, even of an estate in fee simple, although ten times more valuable than her dower, will, of itself, be a bar of dower; but it will be considered a benevolence, and she will be entitled to both. Nor, in such a case, will equity interfere against the wife; fori cannot find any instance in which relief on this subject has been given, but the following — first, where the implication, that she shall not have both-the dower and the devise, is strong and necessary: second, where the devise is entirely inconsistent with the claim of dower; and, third, where the claim of dower would prevent the will from taking effect in toto.
Prac. in Chan. 244. Lilly's Abr. 666.
2 Freem. Rep. 242; Prec- in Chan>133>
2 Yeates, 143; 3 Yeatess, 10; Yeates 5 paige, 601; 8 Paige, 325; 3 Atk.
“ In short, the authorities are numerous and explicit, that dower cannot be barred by collateral recompense; that the devise of anything cannot be averred to be in bar of dower, because a will imports a consideration in itself; and a devise without other matter, is to be taken as a benevolence, and t.he devisee deemed a purchaser.” The Chief Justice concludes /with a long array of authorities which he cites, and announces the unanimous opinion of the Court, that the devises to the demandant cannot be deemed a satisfaction of her dower. In addition to the authorities cited by the Chief Justice, see Sample v. Sample, McCullough v. Allen, Wood v. Wood, Fuller v. Yeates. In Incledon v. Northcote, Lord Hard wicke held, that where the husband had devised to the wife in remainder, the very estate out of which she claimed her *100 dower, it was not a bar or satisfaction of the dower as being inconsistent with the will. In speaking of the inconsistency of the claim with the provisions of the will, he observes “but Lady Northcote does not claim to ovoi-turn’the will, but only a temporary interest, and is only taking out an excrescent interest for a time, and afterwards it will go as the testator intended.” That a rent charge or annuity in favor of the wife, charged upon the real estate devised to some other person, would not exclude the widow from her dower by pulting ^er to e'ect between the annuity and the- dower, is clear beyond all dispute. Not only does this appear from the cases of Hitchen v. Hitchen and Harrison v. Harrison, already ^ut from a review of all the English cases. The earliest of the later cases all run this way, with a temporary corrupted current in the times of Lord Camden and Lord Northinglon. Lord Hardwicke’s decision was in accordance with the principle which 1 have asserted, in Pitts v. Snowden. Different decisions were made by Lord Camden in Villavald v. Lord Galway, by Lord Northington in Arnold v. Kempstea, and by Sir Thomas Sewell in Jones v. Collier. In subsequent cases these decisions have been overruled, and it is settled law, that the wife is not put to her election (ipso facto) by an annuity charged upon real estate devised to others in general terms. (Pearson v. Pearson, 1 Bro. 292, by Lord Rosslin ; Brown v. Perry, Dich. 685, Foster v. Cook 3 Bro. 747, by Lord Thurlow; Straham v. Sutter, 3 Ves. jr. 349, by Lord Alvanly, in which the cases are reviewed. French v. Davies, 2 Vesey, jr. 572.)
Adsit v. Adsit, 2 John. Ch. 428; Hall v. Hall, 1 Bland, 135; Blake v. Barbury, l Vesey, 522; Thompson v. Nelson 1 Co. 447.
Cited in Appen. to 1 Bro. Ca. Amb. 682. Amb. 1466. Amb. 730
2 Younge and Coltyer.
The language ofLord Thurlow in CookSp Foster, is worthy of remark. He says, “ as to the other point, (the claim for dower,) the wife has a charge upon the estate paramount to the will. She has an absolute right to the third part; it is not his to deprive her of it. But here it is to be gathered from circumstances, that she is not to have it. And because he has given all his property to the trustees. I am to gather from his having given all his property, that he has given that which he had not 1 So far from a plain declaration, I have nothing even to lead me to think that he meant to deprive her of it. She must therefore have her dower.” The testator* had given her an annuity charged upon real estate devised to others.
In Holditch v. Holditch, the Vice Chancellor (Knight Bruce) says, “I feel bound by the present state of the authorities to say, that a gift of an annuity to the testator’s widow, though charged on all the testator’s property, is not sufficient to put her to her election. I consider mvself equally bound by the authorities to say, that a mere gift of an annuity so charged, and a gift of the whole of the testator’s real estate, though specified by name to some, other person, are' *101 not of themselves sufficient to put the widow to her election. And moreover, that a gift of a portion of the real estate to^ the wife for life or during widowhood, is not sufficient as to the residue to pm the widow to her election.” “ To put the widow to her election, on the ground that her claim of dower is inconsistent with the intention of the testator as to some other devisee or legatee, there must be something beyond the mere devise or legacy. There must be such circumstances attending the gift, that if dower.be admitted, the devisee or legatee will be disappointed of the enjoyment of the property in the mode pointed out by the testator. It is the mode and not the quantity or extent of the interest, that may make the claim of dower inconsistent with a devise to another, for certainly in all cases where the widow’s claim- of dower comes in conflict with the devise to another, the value of the estate is to that extent diminished.”
I might multiply authorities to an indefinite extent. As to this kind of argument I have said enough ; I will only say, that our own cases cited in the Circuit decree are harmonious with the general current of the decisions. I think 1 have said enough to shew that Chalmers v. Storril, which has been followed by the Court of Appeals in this case, is unsupported either by precedent or authority. It is anomalous and has been severely criticised and condemned by one of the ablest modern authors upon English law, (Jarman on Wills.)
The decision was put in that case, as it is in the case now before this Court, upon an inference of a supposed intention of the testator, unfavorable to the claim of dower, from his having given the lands in moieties. ' Can such an inference arise sooner from this provision, than if he had given the land in three or more shares, or if he had given a -particular tract or part? In the case last supposed, it could with the same propriety be said that the testator intended his devisee to take all the estate he had given him. Yet we have seen how little such a devise avails against the claim of dower on a question of satisfaction.
But the provision in Mr. Henry’s will, that his wife and daughter should have his real estate in equal moieties, is perfectly consistent with the claim of dower. If the widow takes her dower, she only takes her own estate; the moiety given to her, she takes subject to her own claim of dower, which merges with the fee; and the daughter takes of the testator’s estate an equal share, when she takes it subject to the widow’s claim of dower. The misapprehension arises from considering the testator, when he speaks of his estate, as speaking of his wife’s estate. The argument deduced from the fact, that the testator used the same language in disposing of the personal estate, is not entitled to much weight, as long *102 as we find in the books such cases as Forth v. Chapman and Mazyck v. Vanderhorst. But there is no inconsistency whatever, if we consider the testator as disposing only of what he had a right to dispose of. Then the words are consistent and appropriate, whether applied to the real or personal estate, and in no way repugnant to dower.